IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| J.L.F., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:23-cv-00266-CHW |
| | : | |
| COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| Defendant. | : | |
| | : | |

# ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff J.L.F.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Because the ALJ's residual functional capacity determination is supported by substantial evidence, the Commissioner's decision in Plaintiff's case is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title II disability benefits[1] on February 22, 2017, alleging disability beginning on August 28, 2014, based on schizoaffective disorder, severe depression, generalized anxiety disorder, ADD, panic attacks, emotional behavioral issues, diabetes, high blood pressure, and high cholesterol. (R. 101-102). Her date last insured (DLI) was June 30, 2015. (R. 101). After Plaintiff's application was denied initially at the state agency level of review (Exs. C3A, C4A),

---

[1] Plaintiff subsequently filed "for Title XVI disability benefits on December 28, 2020, and was found disabled as of that date." *See, e.g.*, (R. 1625).

1

Plaintiff requested further review before an administrative law judge (ALJ). The ALJ held a hearing on May 20, 2021. (R. 33-73). The ALJ issued an unfavorable opinion on April 25, 2019. (R. 15-32). Plaintiff's request for review of that decision by the Appeals Council was denied on July 17, 2020. (R. 1-7). Plaintiff appealed that decision to the Western District of New York, and the case was remanded upon the parties' stipulation. (R. 1627-1628, 1629). On March 29, 2022, the Appeals Council then remanded Plaintiff's application to the ALJ with direction to evaluate Philip Perez's mental RFC questionnaire, to give further consideration to Plaintiff's maximum RFC with appropriate rationale, and to obtain evidence from a vocational expert if warranted by the expanded record. (R. 1622-1626). The same ALJ held a video hearing on January 5, 2023 (R. 1544-1596), and issued another unfavorable decision on April 5, 2023. (R. 1519-1542). Plaintiff did not seek review with the Appeals Council. (Doc. 7, p. 2). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

**EVALUATION OF DISABILITY**

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be eligible for benefits, Plaintiff's disability must be established prior to her date last insured. *See id.*

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

**MEDICAL RECORD**

There is no dispute that the longitudinal treatment record supports Plaintiff's diagnoses of certain medical ailments, including generalized anxiety disorder, schizoaffective disorder, depression, and ADHD. *See* (Exs. C8F; C5F; C21F; C29F; C32F). However, the record in this case also includes many treatment records outside the period at issue. Although this summary highlights those most contemporaneous to the relevant period – between August 28, 2014, and

Plaintiff's DLI of June 30, 2015 – and focuses on Plaintiff's mental health ailments, the entire medical record has been reviewed.

The record includes primary care notes, emergency room visits, and counseling sessions. Plaintiff's primary care treatment with Dr. Susan Szimonisz often reflects that Plaintiff was alert, cooperative, and well-groomed and that she had a stable mood and affect. (R. 312, 317, 323, 329, 333, 353). Dr. Szimonisz made similar observations at a September 2014 visit, when Plaintiff stated that she wanted to apply for disability because she had "mental problems." (R. 327-331). Plaintiff also sought emergency room treatment, usually for physical ailments such as asthma related complications. (Ex. C4F); *see, e.g.*, (R. 380). At many visits, Plaintiff was cooperative and appeared to be in no acute distress, even when other mental health concerns, such as depression, were noted. (R. 381, 409, 413, 440). These records also include visits during the relevant period when Plaintiff was observed to be alert, well nourished, and in no acute distress, oriented to time, person, and place with normal or calm behavior, mood, and affect. *See, e.g.*, (R. 465, 492, 495, 519, 545).

Plaintiff had attended counseling sessions at Northwest Community Mental Health Center in Buffalo, New York, nearly weekly since October 2012. (Ex. C2F). Throughout her treatment Plaintiff made gains, and although her parents' deaths in December 2015 and October 2016 were stressors, their deaths did not present any significant regression in Plaintiff's treatment. (*Id.*) In a letter dated March 13, 2017, a counselor at Northwest noted that Plaintiff faced financial and housing uncertainties and still exhibited some impulsivity but found that Plaintiff was able to verbalize the effects these issues had on her during her counseling sessions. (*Id.*)

The Appeals Council specifically directed that the ALJ consider and assess the weight of the February 2019 opinion of Philip Perez, a Rehabilitation Specialist. (Ex. C17F). Mr. Perez noted

that Plaintiff was responding positively to treatment, but he also severely limited Plaintiff's ability to work. (R. 1506-1508). The ALJ gave this opinion little weight for several reasons. (R. 1531). The ALJ discounted the check-box format, noted that Plaintiff wrote that she was unable to work on the form before providing it to Mr. Perez (*see* (R. 1506)), and observed that Mr. Perez related Plaintiff's conditions back to August 2014, although he had only treated Plaintiff since October 2018. (R. 1512, 1531, 2020). The opinion was also discounted when considered against the remainder of the medical record. (*Id.*)

*Plaintiff's Testimony Before the ALJ*

For the period at issue, August 2014 to June 2015, Plaintiff testified that her mental health struggles were the primary reasons that she was unable to work at a competitive level. (R. 1566-1587). She explained that she had dealt with mental illness since she was four and that losing her parents in 2014 and 2016 "exasperated [her] mental health symptoms." (R. 1566). The depression and anxiety she felt between their deaths and repeatedly losing jobs made her condition worse, to a degree she considered unbearable. (R. 1566-1567). Her inability to keep jobs made her financial and living situations worse, which in turn made her condition continue to decline. (R. 1567). Plaintiff was able to dress herself, cook meals, feed herself, grocery shop, and complete normal housework, although some tasks would go uncompleted. (R. 1569-1571). She reported that she experienced anxiety and embarrassment when dealing with cashiers and customers while shopping and that she would limit her errands to weekdays when stores were less trafficked. (R. 1570-1571). Plaintiff also testified that her mental health conditions often left her unable to get out of bed, unable to function, and without an appetite. (R. 1571-1572). Plaintiff experienced issues with impulse control such that she would yell, break things, or harm herself. (R. 1572-1573). She

explained that the frustrations she exhibited during the hearing were typical for her during periods of stress. (R. 1587).

*Vocation Expert Hearing Testimony*

A vocational expert, Dr. Randy Salmons, testified regarding Plaintiff's work history and fielded various hypotheticals from the ALJ and Plaintiff's attorney. (R. 1587-1594). Dr. Salmons recognized and discussed Plaintiff's past work as a laundry worker, at both medium and heavy exertional levels. (R. 1588-1589). The ALJ then posed several hypotheticals to Dr. Salmons. (R. 1589-1591). The first hypothetical, which assumed the ability to work light work jobs, excluded all past work. (R. 1589). The second hypothetical assumed the same physical light work limitations, but limited Plaintiff to the accommodations that ALJ ultimately included in Plaintiff's RFC: able to understand, remember, and carry out simple instructions; able to perform repetitive work but without a specific production rate; able to work in a low stress job with only occasional changes; and able to have no more than occasional interaction with supervisors, coworkers, and the general public, with respect to performing work-related duties. (R. 1589-1590). This hypothetical resulted in jobs that Plaintiff could perform. (R. 1590). The ALJ's third hypothetical retained the light work physical limitations from the previous hypotheticals but added that Plaintiff would not be able to attend work tasks without frequent interruptions causing regular and consistent absence from work totaling either more than two days per month or being off task more than 20% of the time in an 8-hour workday. (R. 1590-1591). This hypothetical precluded all work. (R. 1591). Dr. Salmon opined that being off task more than 10% of the workday or being out more than one day month would likely lead to termination. (*Id*.)

Plaintiff's counsel expounded on the second hypothetical by asking Dr. Salmons whether an employer would allow a job coach to be onsite with an employee. (*Id*.) Dr. Salmons did not

6

exclude this possibility but expressed doubts that employers would allow such an accommodation. (*Id*.) When Plaintiff's attorney took away the ability to handle compound directives from the hypotheticals, Dr. Salmons opined that an employee would likely not maintain employment, especially where the employee continued to have issues after training and practice. (R. 1592-1593).

## DISABILITY EVALUATION

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 28, 2014, the alleged onset date, through June 30, 2015, her date last insured. (R. 1525). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: schizoaffective disorder, depressive type; major depressive disorder; borderline personality disorder; attention deficit hyperactivity disorder; generalized anxiety disorder; post-traumatic stress disorder; diabetes mellitus; and right heel spurs. (*Id*.) She also found that Plaintiff suffered from hypertension, postnasal drip, allergy induced asthma, and obesity, but the ALJ found that these impairments were non-severe. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 1525-1527). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform light work as defined by 20 C.F.R. § 404.1567(b), with the following limitations:

> [The claimant] could never climb ladders, ropes, or scaffolds. The claimant could never work in hazardous environments, such as at unprotective heights or around moving mechanical parts. The claimant could understand, remember, and carry out simple instructions in the workplace, could perform repetitive work, but not work requiring specific production rate, such as assembly line work, and could work in a low stress job, defined as making only occasional decisions and toleration only occasional changes in the work setting. The claimant can have no more than

occasional interaction with supervisors, coworkers, and the general public with respect to performing work related duties.

(R. 1527).

Based on this RFC, the ALJ found at step four that Plaintiff, as of her DLI, was not capable of performing any past relevant work. (R. 1533). After hearing from a vocational expert, reviewing the record, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 1533-1534). Some of the representative positions noted were office helper, marker, and cleaner-housekeeping. (R. 1534). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 28, 2014, through the DLI, June 30, 2015. (R. 1534-1535).

## ANALYSIS

Plaintiff argues that remand is warranted because the RFC and the resulting hypothetical posed by the ALJ are not supported by substantial evidence because neither properly accounted for the moderate limitations assessed during the psychiatric review technique (PRT) of the paragraph B criteria at step 3. (Doc. 7). There is no dispute as to the ALJ's evaluation of Plaintiff's severe impairments or his determination that Plaintiff did not meet a mental health listing impairment. Instead, Plaintiff suggests that the ALJ failed to incorporate the moderate limitations as found at step 3 into the posed hypotheticals to the vocational expert (VE) and the ultimate RFC. Specifically, Plaintiff alleges that limiting "Plaintiff to simple work not at a production pace with occasional changes and interaction" failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace. (*Id.*, p. 9). As explained below, the ALJ appropriately accounted for Plaintiff's limitations that are supported by the record when developing the RFC. Substantial evidence supports the decision.

When an ALJ evaluates a claimant's mental health impairments at steps 2 and 3 of the disability analysis, the ALJ considers a claimant's abilities in four functional areas, also known as the paragraph B criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). These areas include the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt of manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b). Concerning Plaintiff's ability to concentrate persist or maintain pace, the ALJ found as follows:

> [Plaintiff] had a **moderate limitation**. The claimant complained of decreased concentration and low energy during the period at issue. However, the claimant was able to shop, perform household chores, and prepare meals for herself. During examination, the claimant exhibited both poor attention and concentration and distractible behavior, as well as good attention and concentration and engaged and focused behavior…. As such, the undersigned finds that the [Plaintiff] had a moderate limitation in this area of functioning during the period at issue.
> (R. 1526) (emphasis in original).

Paragraph B functional areas evaluated in steps two and three are "distinct from the more detailed inquiry as to a claimant's RFC at step four." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel*, 631 F.3d at 1180). Without explicitly acknowledging that these criteria are *not* a residual functional capacity assessment…," Plaintiff does acknowledge that some courts have affirmed decisions with RFCs that similarly limited the claimant to simple, routine tasks where the medical evidence supported it and there were moderate limitations during the PRT. *Id.*; (Doc. 7, p. 11-12). Plaintiff, however, leans on *Winschel*'s directive that an "ALJ is still required to account for a claimant's moderate limitation in the areas of concentration, persistence, or pace in a hypothetical posed to the VE." *Buckwalter*, 5 F.4th at 1325 (citing *Winschel*, 631 F.3d at 1180-1181); (Doc. 7, p. 10-11). While Plaintiff cited more recent case examples where including simple tasks in the RFC accounted for moderate limitations

9

if the record supported it, even *Winschel* couches this directive in terms of what the medical evidence demonstrates a claimant can do. *Winschel*, 631 F.3d at 1180.

Like Plaintiff, the claimant in *Winschel* was found to have moderate limitations in maintaining concentration, persistence, and pace. *Id*. The Eleventh Circuit found that substantial evidence did not support the ALJ's decision because the ALJ failed "to indicate that the medical evidence suggested [the claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." *Id*. at 1181. The ALJ's decision was silent about how the ALJ arrived at the RFC. Even though an ALJ only needs to account for limitations in the RFC that are supported by the record, a reviewing court must be able to follow an ALJ's explanation and analysis of the record. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). In this case, by contrast, the ALJ sufficiently articulated and analyzed the record, and thus did not make the same errors as the ALJ in *Winschel*.

In his discussion of the medical record, for the time period at issue, the ALJ cited to records at step 2 and step 4 demonstrating that Plaintiff faced some challenges from her mental health ailments but that her alleged limitations were not entirely supported by the medical record. At step 2, the ALJ cited records showing Plaintiff's decreased concentration and low energy but also showing that she had numerous moments of good attention, concentration, and focused behavior. (R. 1526). The discussion also acknowledged that Plaintiff was capable of activities of daily living, such as household chores and caring for herself. (*Id*.) During the more thorough discussion of Plaintiff's mental health records at step 4, the ALJ again recognized that Plaintiff reported poor sleep, anxiety, panic attacks, intrusive thoughts, anger, low energy, and decreased concentration not only for the relevant period but with citations to the longitudinal record. (R. 1529). The ALJ further noted treatment records showing that Plaintiff was often oriented to time and place, was

engaged, exhibited normal mood and speech, was able to follow commands, and had good attention and concentration. (*Id.*).

The ALJ further considered the limitations and observations made in the opinion evidence in connection with the record as whole, even though little weight could be given to them, especially for the relevant period. (R. 1531-1532). The ALJ did not ignore the record, but instead thoroughly considered it and the mental health limitations that the record supported for the relevant period. Throughout the decision, the ALJ credited Plaintiff's subjective symptoms and recognized her diagnoses, but he ultimately found that overall record, along with Plaintiff's activities of daily living, was not consistent with further mental limitations than those he included in the RFC. (R. 1530). Based on this review, the medical record supports the mental health limitations accounted for by the RFC for the relevant period.

The hypotheticals posed to the VE at the hearing likewise show that the ALJ incorporated and considered the record-supported limitations. It is true that the ALJ's second hypothetical suggested that Plaintiff could understand, remember, and carry out simple instructions, but the hypothetical did not stop there.[2] (R. 1589-1590). The hypothetical also placed restrictions on Plaintiff's production rates even in a low stress job, as well as limitations on interacting with others in the work environment and related activities. (*Id.*) Based upon the review of the medical record, this hypothetical sufficiently accounted for Plaintiff's limitations in concentration, persistence, and pace. The ALJ also posed additional limitations to the VE in the third hypothetical (R. 1590-1591) but ultimately did not find that these greater limitations were supported by the record. The ALJ

---

[2] Had the hypothetical included only this restriction, substantial evidence would still support the decision. *See Jarrett v. C'mmr of Soc. Sec.*, 422 F. App'x 869, 872 n. 1 ("We [have recognized] that a hypothetical question could sufficiently account for [limitations in concentration, persistence, and pace] by including a restriction to simple or routine tasks if the medical evidence demonstrates that the claimant has the ability to perform those tasks….").

appropriately accounted for the limitations supported by the record during his questioning of the VE.

The ALJ has the responsibility to assess the RFC. 20 C.FR. § 404.1546(c). In this case, the ALJ's reasoning for the RFC was clearly articulated with citations to the record sufficient to establish substantial evidence in support of the decision and not to warrant greater limitations in the RFC for the relevant period. *See Brown*, 677 F. App'x at 531-532. There is no error in the ALJ's discussion of Plaintiff's mental health records, and the limitations included in the hypothetical and the RFC are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the Commissioner's decision be **AFFIRMED**.

**SO ORDERED**, this 26th day of August, 2024.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge